## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

NIRVA BOURSIQUOT,

    Plaintiff,

    v.

JCK LEGACY SHARED SERVICES, INC.,
*formerly doing business as* MCCLATCHY
SHARED SERVICES, INC.,

    Defendant.

_____/

Case No.:

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES AND JURY DEMAND

Plaintiff Nirva Boursiquot ("**Plaintiff**" or "**Ms. Boursiquot**"), by her undersigned counsel, Derek Smith Law Group, PLLC, hereby complains of Defendant JCK Legacy Shared Services, Inc. formerly doing business as McClatchy Shared Services, Inc. (referred to herein as "**Defendant**" or the "**Company**"), and alleges as follows:

## INTRODUCTION

1. This employment discrimination case is about an employer who subjected its employee to relentless harassment, discrimination and retaliation, all culminating in the unlawful termination of the employee.

2. Plaintiff Nirva Boursiquot brings this action pursuant to 42 U.S.C. § 1981 ("**1981**"), and the Florida Civil Rights Act of 1992, §760.01, *et seq.*, Florida Statutes ("**FCRA**").

3. Ms. Boursiquot seeks monetary relief to redress Defendant's unlawful employment practices in violation of 1981 and the FCRA. Additionally, this action seeks to redress Defendant's deprivation of Ms. Boursiquot's personal dignity and her civil right to pursue equal employment opportunities.

4. After almost ninety day of employment in a workplace largely free of discrimination, Ms. Boursiquot found herself at the center of a hostile work environment without possibility of resolution of remedy.

5. Ms. Boursiquot's supervisor incessantly humiliated Plaintiff in the presence of staff regarding innate characteristics otherwise associated with her race, slowly cultivating an environment where her colleagues felt comfortable doing the same. Defendants' unrelenting discrimination against Plaintiff culminated with her unlawful termination.

6. At bottom, Defendant is liable for subjecting Ms. Boursiquot to a work environment infested with relentless race discrimination and for wrongfully terminating her because of her race/national origin and in retaliation for her lawful complaints of discrimination.

## PARTIES

7. Plaintiff Nirva Boursiquot is a Black/Haitian American woman residing in Miami-Dade County, Florida.

8. Defendant JCK Legacy Shared Services, Inc. is a Florida for-profit corporation, and operates its principal place of business at 3511 N.W. 91st Ave., Miami, FL, 33172-1216.

9. At the time of her employment, Plaintiff Boursiquot was employed by and received payment from McClatchy Shared Services, Inc.

10. In or around August 2020, Defendant Company legally changed and/or amended its registered business entity name with the State of Florida from McClatchy Shared Services, Inc. to JCK Legacy Shared Services, Inc.

11. At all times material, Defendant Company was Ms. Boursiquot's employer.

12. At all relevant times, Defendant Company, have been continuously doing business in the State of Florida and Miami-Dade County and has continuously held at least 15 employees for all relevant calendar years. *42 U.S.C. § 12111(5)(A); § 760.*

## JURISDICTION AND VENUE

13. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 1981.

14. Venue is proper in this Court under 28 U.S.C. §1391 because the unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

## ADMINISTRATIVE PREREQUISITES

15. Ms. Boursiquot has complied with all administrative prerequisites.

16. On January 17, 2020, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") (Charge No. 510-2019-06739) and the Florida Commission on Human Relations ("FCHR") against Defendant Company for unlawful employment practices.

17. On or about August 24, 2020, the EEOC issued Plaintiff a Right to Sue.

18. This action is being commenced within 90 days of the EEOC's issuance of Plaintiff's right to sue.

19. Furthermore, this action is being commenced more than one hundred eighty (180) days since the inception of Plaintiff's admirative action against the Defendants. To date no determination has been made by the FCHR relating to the below complaint.

## STATEMENT OF FACTS

20. Ms. Boursiquot is a thirty-five (35) year old Black/Haitian American woman.

21. In or around February 2017, Defendant JCK Legacy Shared Services, Inc. formerly known as McClatchy Shared Services, Inc. hired Plaintiff Boursiquot as a "Strategic Sourcing Manager" based in their Doral Location.

22. Dan Dowis ("**Mr. Dowis**") is a White/Caucasian man, who at all material times was employed by Defendant as its "Director of Shared Services."  Mr. Dowis hired Plaintiff and held direct supervisory authority over Ms. Boursiquot, controlling various terms and conditions of Ms. Boursiquot's employment.

23. Carmelita Ramirez ("**Ms. Ramirez**") is believed to be a Hispanic woman, and at all relevant times was employed by Defendant's as its H.R. Generalist.

24. At all relevant times, Ms. Boursiquot was the only employee who identified as Black/Haitian American working within her department.

25. Prior to the outset of her employment, Ms. Boursiquot was interviewed by multiple management level employees employed by Defendant Company.

26. At the time of her interview, and throughout approximately the first ninety (90) days of her employment, Ms. Boursiquot took additional steps to ensure she exuded the best presentation in order to conform to societal expectations. This included hiding her natural hair as history had shown intolerance towards such in the past.

27. After working for Defendant Company for approximately ninety (90) days and having established herself as a high preforming employee, Ms. Boursiquot felt she would be safe opening up to her colleagues and presenting her natural hair style.

28. As such, in the Summer of 2017, Plaintiff met with her hair stylist and changed her reverted back to a more natural style.

29. Upon arriving to work with her new hair style, Mr. Dowis began to target Plaintiff, repeatedly asking in a derogatory tone, "Oh. You switched your hair style." Mr. Dowis' line of questioning was unique to Plaintiff as, despite the constant change in hair styles by Plaintiff white/Caucasian colleague, Mr. Dowis only targeted Ms. Boursiquot for questioning.

30. At all times, Ms. Boursiquot would engage politely and, in an effort, to engage with her supervisor, but the line of questioning was never ending and became increasingly humiliating.

31. Ms. Boursiquot as a Black/Haitian American would have her hair styled approximately every two-month to ensure she was always professional and presenting appropriately but that did not satisfy Mr. Dowis.

32. In fact, on at least one occasion, Mr. Dowis berated Ms. Boursiquot, reprimanding her for the change and stating, "That is not the hair we hired you with." Mr. Dowis' line of questioning and attack made it clear that Ms. Boursiquot would not have been hired if it were not for her efforts to conform with societal expectation unfairly, inequitably and unjustifiably placed on Black woman.

33. After Ms. Boursiquot would change her hair, Mr. Dowis would make a point of highlighting the change publicly during team meetings, encouraging her colleagues to join in the banter and engage in a line of invasive and humiliating questions.

34. By means of example, following an appointment wherein Ms. Boursiquot changed her hair, she joined her team for a previously scheduled team meeting. Present during the meeting were Mr. Dowis, Ms. Lydia Lopez, Mr. Philip Kane, and Mr. Hilton Aguilar.

35. Without hesitation, upon entering the room Mr. Dowis eyed Ms. Boursiquot and announced to the team, "Look! Nirva changed her hair again" and proceeded to egg on her colleagues.

36. While Mr. Aguilar and Ms. Lopez seemed to uncomfortably laugh along with their supervisor, Mr. Kane took the bait and proceeding down his own line of questioning about the change in style.

37. At all times Ms. Boursiquot would attempt to respectfully deviate back to the purpose of the meeting but was met with resistance until Mr. Dowis decided he had ridiculed her sufficiently for that day.

38. At all times Ms. Boursiquot would politely ask her colleagues and Mr. Dowis to refrain from commenting on her hair but these requests fell on deaf ears. Instead, the comments continued to escalate as those around her became more emboldened.

39. On or around March 11, 2019, after months of these incessant attacks, Ms. Boursiquot decided she was left with no other alternative and contact Defendant Company's Human Resources Generalist, Ms. Carmelita Ramirez.

40. Ms. Boursiquot advised Ms. Ramirez of the events which had transpired over the preceding months and the efforts she took on her own to end the harassment. Ms. Boursiquot explained to Ms. Ramirez the cultural significance of her hair style and that she felt she had no alternative but to escalate the matter further as she could no longer tolerate the discriminatory comments.

41. Ms. Ramirez advised Ms. Boursiquot that she would call to further investigate the matter. Despite these assurances, Defendant Company failed to timely investigate Ms. Boursiquot's complaints of discrimination and harassment and failed to take any corrective action as towards the unlawful conduct.

42. On or around March 13, 2019, Plaintiff Boursiquot was met with an impasse as she attempted to login into her work account at the outset of the workday. Receiving prompts that her

login access was cutoff, Plaintiff contacted Defendant Company's IT department anticipating this was a glitch that could easily be remedied.

43. To her surprise, Plaintiff was advised that her access had been intentional and expressly suspended by Mr. Dowis, stating Ms. Boursiquot was to be "Locked Out" immediately and denied access.

44. As Plaintiff Boursiquot became concerned, she called Mr. Dowis to inquire directly as to the change. Mr. Dowis explained he was on his way to the office and requested Ms. Boursiquot meet with him upon his arrival.

45. At approximately 10AM, Plaintiff entered Mr. Dowis' office. Present in his office at the time was the East Region Director, Natalie Piner. Mr. Dowis proceeded to falsely accuse Plaintiff of being on vacation without his knowledge and approval, despite his having clear knowledge of her absence both in advance of the time off and throughout the course of her vacation.

46. In fact, during her vacation, Ms. Boursiquot has assisted Mr. Dowis, taking calls and assignments from him. Mr. Dowis had even so much as notified a Company Supplier that Ms. Boursiquot was out of contact because she was on vacation and would follow up upon her return.

47. When Ms. Boursiquot attempted to point out these facts, Ms. Piner appeared shocked, as though Mr. Dowis had seemingly withheld this information from her.

48. Ms. Boursiquot was asked to temporarily step out of the room so that Mr. Dowis and Ms. Piner could presumably discuss.

49. Approximately thirty minutes later, Ms. Boursiquot was called back into the meeting at which she was instructed to turn over any Company property including her badge and laptop and sent home. She was advised Human Resources would "be in touch."

50. Upon returning home, Plaintiff contacted Ms. Ramiez to inquire as to the status of the discrimination complaint she had previously made. Ms. Ramirez advised she was aware of the events from that morning and would follow up shortly.

51. On or around March 15, 2019, Defendant wrongfully terminated Ms. Boursiquot. Defendant Company unlawfully terminated Ms. Boursiquot because of her race and in retaliation for her complaints of unlawful discriminatory practices by Mr. Dowis.

52. The aforementioned allegations are just some of the examples of the discrimination Ms. Boursiquot suffered.  Additionally, Ms. Boursiquot claims a continuous practice of discrimination and continuing violations and makes all claims herein under the continuing violations doctrine.

53. As a result of the acts and conduct complained of, Ms. Boursiquot has suffered and will continue to suffer loss of income, loss of salary, bonuses, benefits, and other compensation which such employment entails.  Ms. Boursiquot also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

54. Ms. Boursiquot suffers from increased stress and anxiety.  Similarly, Ms. Boursiquot has trouble sleeping as a result of Defendants' conduct.

55. Further, as a result of Defendant's unlawful employment practices, Ms. Boursiquot felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

56. As Defendants' conduct has been malicious, willful, extreme and outrageous, and with full knowledge of the law, Ms. Boursiquot seeks punitive damages.  Ms. Boursiquot has presented factual allegations that would permit any reasonable jury to award damages.

57. At bottom, Defendant is liable for their reckless disregard for Ms. Boursiquot's personal dignity and her civil right to pursue equal employment opportunity.

58. Ms. Boursiquot has suffered damages as a result of Defendant's unlawful employment practices.

## COUNT ONE
*Race Discrimination (Discrete Act/Unlawful Termination)*
*in Violation of* § 1981

59. Plaintiff realleges and incorporates herein the allegations contained at length in paragraphs 21 paragraphs 51 above.

60. This is an action for discrimination and harassment because of Plaintiff's race in violation of Section 1981. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

63. Plaintiff, as a member of the Black and/or Haitan-American race, was discriminated against by Defendant because of her race as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

64. Defendant constantly enforced a purposefully discriminatory pattern and practice of Black employees of the equal rights described therein, in further violation of 42 U.S.C. §1981.

65. Plaintiff is a Black/Haitian American woman and is protected under Section 1981.

66. Plaintiff was the only Black woman working within her Department.

67. At all times relevant, Plaintiff was treated differently because of her race.

68. Defendant subjected Plaintiff to a hostile work environment because of her race.

69. Defendant unlawful and wrongfully terminated Plaintiff because of her race.

70. As a result of Defendant's discrimination in violation of Section 1981, Plaintiff has been denied the enjoyment of all benefits, privileges, terms, and conditions of Plaintiff's contractual relationship which provided substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and having suffered such anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of Defendant's actions, thereby entitling Plaintiff to compensatory damages.

71. As alleged above, Defendant acted with malice or reckless indifference to the rights of the Plaintiff and copious other individuals named herein, thereby entitling Plaintiff to an award of punitive damages.

72. Defendant violated the above and Plaintiff suffered numerous damages as a result.

73. Plaintiff makes a claim against Defendant under all of the applicable paragraphs of 42 U.S. Code § 1981.

74. Plaintiff claims Defendant both unlawfully discriminated against Plaintiff and unlawfully retaliated against Plaintiff in violated of 42 USC 1981.

## COUNT TWO
*Race Discrimination (Hostile Work Environment)*
*in Violation of* § **1981**

75. Plaintiff realleges and incorporates herein the allegations contained at length in paragraphs 21 paragraphs 51 above.

76. This is an action for discrimination and harassment because of Plaintiff's race in violation of Section 1981. 42 USC Section 1981 states in relevant part as follows:

(a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

77. Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristic; and (2) was severe or pervasive enough to make a reasonable person of the same legally protected class believe that the conditions of employment were altered, and that the working environment was intimidating, hostile or abusive.

78. The harassing conduct was directly connected to Plaintiff race.

79. Defendant's employees regularly harassed Plaintiff because of her race and her complaints of discrimination.

80. Defendant's employees regularly made discriminatory comments about Plaintiff on account of her race.

81. Defendant's discriminatory conduct was not welcomed by Plaintiff.

82. As a result of the hostile work environment, Plaintiff suffered a "tangible employment action" defined as a significant change in employment status, failure to promote, reassignment with significantly different responsibilities, and/or a decision causing a significant change in benefits.

83. Defendant failed to exercise reasonable care to prevent racial harassment in the workplace by failing to establish an explicit policy against harassment in the workplace on the basis of race, failing to fully communicate the policy to its employees, and/ or failing to provide a reasonable way for Plaintiffs to make a claim of harassment to higher management, and failing to take reasonable steps to promptly correct the harassing behavior raised by Plaintiff.

84. As a result of Defendant's violations of § 1981, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, mental pain and suffering; humiliation; emotional distress; diminishment of career opportunities; harm to business reputation; loss of self-esteem; disruption to her family life; and other harm, pain and suffering, both tangible and intangible.

**COUNT THREE**
*Race Discrimination (Retaliation)
in Violation of* § **1981**

85. Plaintiff realleges and incorporates herein the allegations contained at length in paragraphs 21 paragraphs 51 above.

86. This is an action for retaliation by Defendant against Plaintiff in violation of Section 1981.

87. Defendant discriminated against Plaintiff because her race.

88. Plaintiff complained about the discriminatory treatment she received based on her race.

89. The retaliatory actions taken against Plaintiff would deter a reasonable person from making or maintaining a complaint of discrimination and/or harassment against Defendant.

90. Plaintiff has been damaged as a direct and proximate result of Defendant's illegal employment practices, including suffering economic damages, compensatory damages, emotional pain and suffering, inconvenience, mental anguish, outrage, loss of enjoyment of life, loss of dignity, and other non-pecuniary losses and tangible injuries.

**COUNT FOUR**
*Race Discrimination (Discrete Act)*
*in Violation of the FCRA §760.10(1)(a)*

91. Plaintiff realleges and incorporates herein the allegations contained at length in paragraphs 21 paragraphs 51 above.

92. Plaintiff is a Black/Haitian American woman and is protected under Section 1981.

93. Plaintiff was the only Black woman working within her Department.

94. At all times relevant, Plaintiff was treated differently because of her race.

95. Defendant subjected Plaintiff to a hostile work environment because of her race.

96. Defendant discriminated against Plaintiff by wrongfully terminating her because of her race.

97. Plaintiff was otherwise qualified to perform the essential functions of her job. Additionally, Defendant has no history of discipline for inadequate performance up and until Plaintiff complained of discrimination.

98. Defendant intentionally discriminated against Plaintiff by discharging Plaintiff because of her race.

99. Accordingly, Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination.

100. As a result of Defendant's unlawful employment practices in violation of the FCRA, Plaintiff has suffered damages.

## COUNT FIVE
*Race Discrimination (Hostile Work Environment)*
*in Violation of the FCRA §760.10(1)(a)*

101. Plaintiff realleges and incorporates herein the allegations contained at length in paragraphs 21 paragraphs 51 above.

102. Florida courts recognize race based hostile work environment claims under the FCRA.

103. Defendant's Supervisor, Mr. Dowis subjected Plaintiff to unwelcome harassment, which Plaintiff opposed. Plaintiff asked Mr. Dowis to stop making comments and drawing attention to her hair. Plaintiff further complained and opposed Mr. Dowis' conduct by reporting his mistreatment to Ms. Ramirez.

104. Defendant's conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's work environment. Mr. Dowis insisted on publicly humiliating Plaintiff and commenting on her hair in the presence of her colleagues. Plaintiff's opposition to this base discrimination evinces the unwelcome quality of Defendants' harassment.

105. Defendant's conduct was the but for cause of the aforementioned harassment. Indeed, following Plaintiff's requests to refrain from commenting on her hair, Mr. Dowis continued to openly berate, belittle and humiliate Plaintiff.

106. Accordingly, Plaintiff was subjected to severe and/or pervasive discrimination from all levels of corporate management purely on the basis of her race.

107. Defendant is strictly and/or vicariously liable for subjecting Plaintiff to a race based hostile work environment.

108. As a direct and proximate result of the unlawful discrimination facilitated by Defendant, Plaintiff has suffered damages.

109. Defendant is liable for unlawful race discrimination under the FCRA.

### COUNT SIX
*Race Discrimination (Retaliation)*
*in Violation of the FCRA §760.10(7)*

110. Plaintiff realleges and incorporates herein the allegations contained at length in paragraphs 21 paragraphs 51 above.

111. The FCRA prohibits discrimination against an individual for opposing unlawful acts under the FCRA or for opposing or complaining about race discrimination. § 760.10(7), Fla. Stat. (2020).

112. Plaintiff made multiple requests to Mr. Dowis that he refrain from commenting on Plaintiff's hair. Additionally, Plaintiff filed a formal complaint of discrimination with Defendant on March 11, 2019 requesting multiple accommodations to ameliorate the adverse effects of her disabilities. Plaintiff engaged in protected activity.

113. Defendant took materially adverse actions against Plaintiff by wrongfully terminating Plaintiff following her discrimination complaints. Any reasonable person in Plaintiff's position would be dissuaded from complaining about ongoing harassment if she knew that such action would result in more, not less harassment.

114. Accordingly, Defendant retaliated against Plaintiff for opposing unlawful employment practices.

115. As a result of Defendant's willful violation of the FCRA, Plaintiff has suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury for the claims set forth in the complaint.


Dated: Miami, Florida
April 7, 2021

**DEREK SMITH LAW GROUP, PLLC**

_____
Caroline H. Miller, Esq.
701 Brickell Ave., Suite 1310
Miami, Florida 33131
P: (305) 946-1884
caroline@dereksmithlaw.com
*Attorneys for Plaintiff Nirva Bourisquot*